UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Scott Zucker, *Plaintiff*, v. Johnson & Bell, Ltd., *Defendant*. | No. 25 CV 5123 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Scott Zucker brings this suit against Johnson & Bell, Ltd. asserting claims for Conversion (Count I), Breach of Fiduciary Duty (Count II), Fiduciary Fraud (Count III), and Accounting (Count IV). [Dkt. 1.][1] Before the court is Johnson & Bell's motion to dismiss for lack of jurisdiction and failure to state a claim. The motion is granted in part and denied in part. [Dkt. 15.]

I. Background[2]

In 2019 CannaBoss, LLC, AAMJ, LLC, Unifern, L.L.C., and Semyon Shtayner (the "CannaBoss Parties") entered into a Promissory Note with Scott Zucker in which they agreed to pay Zucker $2.2 million and interest. [Dkt. 1, ¶ 8.] To secure the Note, Zucker and the CannaBoss Parties also signed a Security Agreement that granted Zucker a "first position, priority security interest" in each of the businesses' assets, including all investments, intangibles, chattel paper, all accounts, contract rights, and choses in action. [*Id.*, ¶¶ 11–12, 15.] Zucker then filed UCC financing statements detailing those security interests in Illinois, Nevada, and Florida. [*Id.*, ¶ 14.] The financing statements attached to Zucker's complaint show he filed financing statements detailing his interests in AAMJ's, CannaBoss's, and Unifern's assets in Nevada, and Shtayner's assets in Florida, Nevada, and Illinois. [Dkt. 1–4.] The CannaBoss Parties subsequently defaulted on the Promissory Note [Dkt. 1, ¶ 10.]

Also in 2019, the law firm Johnson & Bell began representing CannaBoss, LLC on an hourly basis in an Illinois lawsuit. [*Id.*, ¶¶ 17, 22.] In January 2021 a Johnson & Bell attorney requested that Zucker send him the Promissory Note and Security

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[2] The following factual allegations are taken from the Complaint [Dkt. 1] and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

1

Agreement signed by the CannaBoss Parties. [*Id.*, ¶¶ 25, 74(a).][3] Upon receiving the agreements, Johnson & Bell "represented to [Zucker] and assured [him] that they were both aware of [Zucker's] first priority position" and "confirmed that [Zucker] held a secured first position with respect to the IOLTA Settlement Funds and that [he] would receive the IOLTA Settlement Funds." [*Id.*, ¶ 74.]

In June 2023 the lawsuit settled for $500,000, payable to CannaBoss, LLC. [*Id.*, ¶ 27.] The settlement agreement provided that CannaBoss would receive the money in two separate payments ($250,000 each) via wire transfer to Johnson & Bell's client trust account at The Northern Trust Company, also known as its Interest on Lawyers' Trust Account (IOLTA). [*Id.*, ¶¶ 28–29.] Johnson & Bell again told Zucker on the day of the settlement that the firm knew Zucker had a first position lien on the funds and that he would receive them. [*Id.*, ¶ 74(c).] And in August 2023, the firm sent a text to Zucker telling him that "the money will sit in escrow." [*Id.*, ¶ 74(d).] Despite these assurances, Johnson & Bell "exercised dominion and control over the IOLTA Settlement Funds… and wrongfully disbursed the Settlement Funds from its IOLTA to itself." [*Id.*, ¶ 44.] "[D]emands were made upon [Johnson & Bell] to return the IOLTA Settlement Funds," but the law firm refused to return the funds. [*Id.*, ¶¶ 49–50.]

Based on these acts, Zucker filed this suit against Johnson & Bell, alleging claims for Conversion (Count 1), Breach of Fiduciary Duty (Count II), Fiduciary Fraud (Count III), and Accounting (Count IV).

## II.  Legal Standard

Johnson & Bell moves to dismiss Zucker's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The court assesses the complaint's plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Rule 12(b)(1) provides the means for a defendant to challenge whether a court has subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III standing is a

---

[3]   Johnson & Bell attached their own "pledge and security agreement" with the CannaBoss Parties to their reply brief. [Dkt. 28–1.] Zucker asserts that the attachment is further proof that the firm knew of his security interest in the settlement funds because Johnson & Bell's agreement appears to be an exact replica of the agreement between Zucker and the CannaBoss parties. The agreements purport to be signed on the exact same date, July 31, 2019.

requirement for federal jurisdiction, and the doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"To establish the 'irreducible constitutional minimum' of standing, a plaintiff must allege she suffered (1) an injury in fact, (2) that is fairly traceable to the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Bost v. Ill. State Bd. of Elections.*, 114 F.4th 634, 639 (7th Cir. 2024) (quoting *Lujan*, 504 U.S. at 560–61). It requires that the plaintiff demonstrate that he has a "personal stake in the case" sufficient to justify the exercise of federal judicial power. *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021).

A defendant can bring two types of standing challenges: facial and factual challenges, "each with its own procedural and evidentiary rules." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022). First, "[a] facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true." *Id.* Second, a factual challenge "asserts that there is *in fact* no standing." *Id.* (emphasis in original). A defendant bringing a factual challenge "may use affidavits and other material to support the motion" and "the court is free to weigh the evidence to determine whether jurisdiction has been established." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

### III. Analysis

#### A. Standing

Johnson & Bell raises a threshold question of whether Zucker in fact has standing to sue. It asserts that, because Zucker has no right to the settlement funds, he has not asserted an injury-in-fact traceable to the law firm's conduct. Not so.

The complaint establishes Zucker's standing because, as discussed below, he alleges a legal right to settlement funds that Johnson & Bell currently possess. That alleged injury is all that is required at the pleading stage. Nor have Johnson & Bell pointed to evidence suggesting that Zucker's allegations with regard to his injury are false. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (holding that plaintiff failed to establish in fact standing at the motion to dismiss stage when defendant produced clear evidence that plaintiff had not suffered an injury and plaintiff failed to present any evidence in rebuttal); *Inverom Corp. v. Digitek S.p.A.*, 2011 WL 1231307, at *1 (N.D. Ill. Mar. 29, 2011) ("[D]efendants have come forward with nothing which undermines the allegations of the complaint. Accordingly, at this point in the litigation, the court cannot treat this as a factual challenge to subject matter jurisdiction; instead, the court must assume the allegations of the complaint are true.").

The thrust of Johnson & Bell's argument—that it has a perfected, priority interest in the settlement funds—is a merits question. The firm points to its own security agreement with CannaBoss to establish that it has a first priority right to the funds because it held the funds in its IOLTA. Because its IOLTA is a deposit account, the argument goes, Johnson & Bell's interest in the funds as "owner" of the deposit account has priority over any interest Zucker has in the funds. See 810 ILCS 5/9-327 ("A security interest held by a secured party having control of a deposit account…has priority over a conflicting security interest held by a secured party that does not have control.").

The court is not convinced by this characterization. An IOLTA is a pooled fund that lawyers use to deposit a client's funds for a short-term. Accepting Zuker's allegations as true and drawing all inferences in his favor, as the court must at the pleading stage, the funds in the IOLTA seem less like a debtor's deposit account and more like an escrow account, which courts have found are not deposit accounts under the UCC. See, *e.g., Royce v. Michael R. Needle, P.C.*, 381 F. Supp. 3d 968, 983 (N.D. Ill. 2019); see also Escrow Definition, https://www.merriam-webster.com/dictionary/escrow (last visited October 2, 2025) (defining "escrow" as "a deed, bond, money, or a piece of property held in trust by a third party to be turned over to the grantee only upon fulfillment of a condition").

In any event, as explained below, the complaint supports an inference that the conversion occurred *before* the funds entered the IOLTA and that Johnson & Bell ultimately disbursed the settlement funds from its IOLTA to itself. Discovery is necessary before determining the exact parameters of each party's property right, if any, in the settlement funds. The case that Johnson & Bell cites only underscores this point because it was resolved at the summary judgment stage, not on a motion to dismiss. *Platte Valley Bank v. Tetra Financial Group, LLC*, 682 F.3d 1078 (8th Cir. 2012).

### B. Conversion

Zucker alleges facts sufficient to support a claim for conversion against Johnson & Bell. To state a claim for conversion under Illinois law, a plaintiff must plead facts raising a plausible inference that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998).

Zucker maintains that as the owner of a security interest in CannaBoss's choses of action, he had an unconditional and immediate right to possess the settlement funds awarded to CannaBoss. A person has a right to property in which he possesses an enforceable security interest. See *Capco 1998-D7 Pipestone, LLC v. Milton Ventures, LLP*, 2005 WL 1667445, at *3 (N.D. Ill. July 13, 2005) ("Illinois

4

courts have held that a plaintiff may state a claim for conversion based on an alleged impairment of the plaintiff's security interest."). A security interest attaches and becomes enforceable when (1) value has been given; (2) "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party"; and (3) the debtor signs a security agreement containing a description of the collateral. 810 ILCS 5/9-203. Each element is adequately alleged here.

Zucker alleges that, in exchange for his services, CannaBoss agreed to pay him $2.2 million, as outlined in a promissory note. To secure the note, the company granted Zucker a security interest in numerous assets, including, "whether now owned" or "after-acquired," "general intangibles," "Choses in Action," and "any and all Proceeds and Products" of those assets. [Dkt. 1, ¶ 15, Dkt. 1–3 at 2-3.] CannaBoss received a $500,000 settlement, which constitutes a chose in action and general intangible. See *GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976, 980 (7th Cir. 2003) ("One form of intangible property is a 'chose in action,' which in its classic sense is a legal claim, that is, something on which an 'action' (a lawsuit) might be founded, such as a right to recover a debt."). It is plausible, then, that because CannaBoss defaulted on its promissory note, Zucker's rights in the settlement funds fully vested, and he had an unconditional and immediate right to possession of the funds. See *Capco 1998-D7 Pipestone*, 2005 WL 1667445, at *3.

The complaint also alleges that when Johnson & Bell deposited the settlement funds in its IOLTA and then subsequently disbursed the funds to itself, it converted Zucker's security interest in the funds. [Dkt. 1, ¶¶ 34-36, 44, 46.] See *Heartland Bank & Tr. v. The Leiter Grp.*, 18 N.E.3d 558, 566 (Ill. 2014) (holding that law firm converted bank's security interest in proceeds of debtor's collateral when it deposited those proceeds into its IOLTA account despite knowing of the security interest attached to the funds); see also *W. States Ins. Co. v. Louis E. Olivero & Assocs.*, 670 N.E.2d 333, 335–36 (Ill. 1996) (awarding summary judgment in favor of plaintiff on conversion claim when law firm released settlement funds to client despite an insurance company's subrogation interest in the funds).

Finally, Zucker adequately alleges that he made a demand for possession by providing Johnson & Bell the promissory note and security agreement documenting his interest in the funds and then demanding payment of the settlement funds. [Dkt. 1, ¶¶ 47, 49.] *Cf. Fonda v. Gen. Cas. Co. of Illinois*, 665 N.E.2d 439, 446 (Ill. App. Ct. 1996) (holding that secured party satisfied demand element by notifying defendant-insurer of his assigned right in proceeds of an insurance pay-out before defendant-insurer paid insured and sending a demand for payment after defendant-insurer wrongfully paid insured).

So as to Count I—Johnson & Bell's alleged conversion of $500,000 in settlement funds—the motion to dismiss is denied.

### C. Claims Concerning a Breach of Fiduciary Duty

Zucker also brings various claims premised on an alleged fiduciary duty owed to him by Johnson & Bell. "The general rule in Illinois is that an attorney owes a duty of care only to his client and not to third parties." *Schechter v. Blank*, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993); *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 90 N.E.3d 463, 474 (Ill. 2017). An exception to the rule exists "where the attorney was hired by the client specifically for the purpose of benefitting that third party." *Id.* It is not enough that some third-party would "obviously benefit" from the representation; rather, the "primary purpose and intent" of the representation must have been to benefit the third-party. *Id.* at 110. The "key consideration" is whether the attorney was "acting at the direction of or on behalf of the client to benefit or influence a third-party." *Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982). Zucker cannot avail himself of this exception because he does not allege that CannaBoss hired Johnson & Bell for his benefit.

Zucker contends that Rule 1.15 of the Illinois Rules of Professional Conduct, which governs an attorney's obligations regarding client funds in which third-parties claim interests, creates a legal duty between a lawyer and a party claiming an interest in client funds deposited in the lawyer's IOLTA. But the rules specifically state that violations do not "give rise to a cause of action against a lawyer" or create a presumption that a legal duty has been breached. Ill. R. Prof'l Conduct Preamble; see *Kelly v. Carthon*, 2001 WL 641114, at *1 (N.D. Ill. June 4, 2001); see also *Prospect Funding Holdings, LLC v. Saulter*, 102 N.E.3d 741, 750 (Ill. App. Ct. 2018) (holding that, even if an attorney had a duty to hold settlement funds for client's creditor in his trust account pursuant to Rule 1.15, his failure to do so could not serve as a basis of any claim by the client's creditor).

Nor has Zucker shown that a fiduciary relationship arose "as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 945 (1994). Both Zucker and Johnson & Bell are sophisticated parties who dealt with each other at arm's length. Zucker has not pointed to any caselaw establishing a fiduciary relationship existed merely because one party had control over another party's funds.

Finally, the court is unpersuaded by Zucker's contention that Johnson & Bell owed him a fiduciary duty as a beneficiary of funds from the IOLTA. While Illinois has not seemed to address this particular question, other state courts have rejected such a duty. See *Accident & Inj. Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 660 (Colo. 2012) (holding that lawyer owed no fiduciary duty to client's creditors because imposing such a duty "would subject the lawyer to the possibility of tort liability for failing to act in the best interests of the third party with respect to those funds, interests that conflict with obligations the attorney owes the client"); *Biller Assocs. v. Peterken*, 849 A.2d 847, 852–53 (Conn. 2004) ("[A] rule creating a fiduciary

6

relationship between an attorney and a third party claiming an interest in the funds of the attorney's client would jeopardize a central dimension of the attorney-client relationship, namely, the attorney's duty of undivided loyalty to his or her client."). This makes sense. Unlike the typical trustee or escrow agent, Johnson & Bell, as counsel for CannaBoss, had an interest in the funds contrary to that of Zucker. See *Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 22 N.E.3d 125, 136 (Ill. App. Ct. 2014) (explaining that categorization of "escrow agent" in regard to opposing party's counsel was "inaccurate" because counsel was "not a neutral individual").

Because no fiduciary duty existed between the parties, the court dismisses Counts II through IV.

## IV. Conclusion

The motion to dismiss is granted as to Counts II through IV. A plaintiff usually receives at least one chance to fix deficiencies in a complaint, so the dismissal of these counts is without prejudice. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). The motion is denied as to Count I.

Enter: 25-cv-5123
Date: October 8, 2025

_____
Lindsay C. Jenkins